**Eric B. Swartz, ISB #6396**
**JONES & SWARTZ PLLC**
**Landmark Legal Group™**
623 West Hays Street
Boise, ID 83702
Telephone:  (208) 489-8989
Facsimile: (208) 489-8988
Email: eric@jonesandswartzlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JULIE YOUNG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>U.S. GEOTHERMAL, INC., JOHN H. WALKER, PAUL LARKIN, LELAND MINK, JAMES C. PAPPAS, RANDOLPH J. HILL, ALI HEDAYAT, DOUGLAS J. GLASPEY, ORMAT TECHNOLOGIES, INC., ORMAT NEVADA, INC., and OGP HOLDING CORP.,<br><br>Defendants. | Civil Action No. 1:18-cv-145<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Julie Young ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by U.S. Geothermal Inc. ("U.S. Geothermal" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAW – 1

of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning U.S. Geothermal and the Defendants.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public shareholders of U.S. Geothermal against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Ormat Technologies, Inc. ("Ormat") through its subsidiary Ormat Nevada Inc. ("Parent") (the "Proposed Transaction").

2.     On January 24, 2018, U.S. Geothermal entered into an Agreement and Plan of Merger (the "Merger Agreement") with Parent and OGP Holding Corp., a wholly owned subsidiary of Parent ("Merger Sub"), pursuant to which Parent will purchase each issued and outstanding share of the Company's common stock in exchange for $5.45 in cash (the "Merger Consideration").  Upon consummation of the Proposed Transaction, Merger Sub will merge with and into the Company, and the Company will be the surviving corporation in the merger and a wholly owned subsidiary of Parent.

3.     The Proposed Transaction, as it stands, is unfair to the Company's shareholders. The Company's Board has agreed to unfair Merger Consideration, as numerous offers were higher than the $5.45 ultimately accepted by the Company's Board.  Moreover, the special committee formed to consider potential alternatives to the Proposed Transaction valued the

Company at $5.85 per share. Despite that fact, the special committee recommended the Board enter into the Proposed Transaction.

4.     Additionally, the process leading to the Proposed Transaction was flawed. For example, the very same day the Board agreed to the Proposed Transaction, the special committee found out that the Proposed Transaction's structure was not what it had initially appeared to be. Despite this, the committee still recommended the Board enter into the Proposed Transaction.

5.     On March 20, 2018, the Company filed a Proxy Statement on Form DEFM14A (the "Proxy Statement") with the SEC. As set forth in further detail herein, the Proxy Statement omits material information regarding the Proposed Transaction, thereby rendering it false and misleading in violation of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9.

6.     Specifically, the Proxy Statement contains materially incomplete and/or misleading information regarding the process of the Proposed Transaction, financial projections prepared by the Company's management, analyses conducted by the Company's financial advisor for the Proposed Transaction, ROTH Capital Partners, LLC ("ROTH"), and the process leading to the Proposed Transaction.

7.     As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction. In the event that the Proposed Transaction is consummated, Plaintiff seeks to recover damages from the Defendants for their breaches of fiduciary duties and from Granite and its affiliates for aiding and abetting said breaches.

### JURISDICTION AND VENUE

8.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains

operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.    Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Further, the Company's principal executive offices are located in this District.

## THE PARTIES

10.    Plaintiff is, and has been at all times relevant hereto, the owner of U.S. Geothermal common stock.

11.    Defendant U.S. Geothermal is a Delaware corporation with its principal executive offices located at 390 E. Park Center Boulevard, Suite 250, Boise, Idaho 83706.  The Company's common stock is traded on the NYSE under the symbol "HTM."

12.    Defendant John H. Walker ("Walker") has been the Chairman of the Company's Board since December 2003.

13.    Defendant Paul Larkin ("Larkin") has been a member of the Company's Board since 2000.

14.    Defendant Leland Mink ("Mink") has been a member of the Company's Board since 2006.

15.    Defendant James C. Pappas ("Pappas") has been a member of the Company's Board since September 2016.

16.    Defendant Randolph J. Hill ("Hill") has been a member of the Company's Board since September 2016.

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAW – 4

17.    Defendant Ali Hedayat ("Hedayat") has been a member of the Company's Board since February 2017.

18.    Defendant Douglas J. Glaspey ("Glaspey") has been a member of the Company's Board since 2000, the Company's President since September 2011, Chief Operating Officer since 2003, and Chief Executive Officer ("CEO") since July 2017.

19.    Defendants Walker, Larkin, Mink, Pappas, Hill, Hedayat, and Glaspey are collectively referred to herein as the "Individual Defendants."

20.    Defendant Ormat is a Delaware Corporation with its principal executive offices located at 6225 Neil Road, Ste. 300, Reno, Nevada 89511.

21.    Defendant Parent is a Delaware corporation and a wholly-owned subsidiary of Defendant Ormat.

22.    Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of parent.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public shareholders of U.S. Geothermal (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24.    This action is properly maintainable as a class action for the following reasons:

a.    The Class is so numerous that joinder of all members is impracticable. As of March 1, 2018, there were 19,494,566 U.S. Geothermal common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

      b.      Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

      c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

      d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

      e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

      f.      A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

25.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

26.    U.S. Geothermal was incorporated in 2000 and is a renewable energy company focused on the development, production and sale of electricity from geothermal energy. The Company operates geothermal power projects at Neal Hot Springs, Oregon, San Emidio, Nevada and Raft River, Idaho.  The Company is also developing additional projects at: the Geysers, California; a second phase project at San Emidio, Nevada; at Crescent Valley, Nevada; and the El Ceibillo project located near Guatemala City, Guatemala.

### The Company Announces the Proposed Transaction

27.    On January 24, 2018, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

**U.S. Geothermal Inc. Enters Into Definitive Agreement to Be Acquired by Ormat Technologies Inc. for $5.45 in Cash Per Share**

BOISE, Idaho, Jan. 24, 2018 (GLOBE NEWSWIRE) -- U.S. Geothermal Inc. (the "Company") (NYSE American:HTM) announced today that it has entered into a definitive merger agreement under which a wholly owned subsidiary of Ormat Technologies, Inc. ("Ormat") (NYSE:ORA) will acquire the Company for $5.45 per share in an all cash transaction.

The agreement, which has been unanimously approved by both companies' Boards of Directors, represents a premium of approximately 28.5% to the prior day closing stock price on January 23rd, 2018.

**Statement by Doug Glaspey, a Founder and Chief Executive Officer of US Geothermal**

"We are proud that Ormat, the industry leader in geothermal development, recognized our company's value and have confidence in their ability to successfully develop the US Geothermal asset base," said Doug Glaspey, CEO of US Geothermal. "This transaction provides compelling value to our shareholders and is a testament to the hard work and efforts of our talented team members."

**Statement by Ormat**

"US Geothermal has developed a high-quality portfolio of geothermal assets," said Isaac Angel, CEO of Ormat Technologies. "As part of Ormat, we will leverage our core capabilities to help improve generation and enhance efficiency of these assets while also working to advance expansion opportunities. With this transaction, we demonstrate again the implementation of our business strategy to grow our business with accretive M&A transactions."

**Transaction Details**

The transaction is not subject to a financing condition and is expected to close during the second quarter of 2018, subject to the approval of US Geothermal shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

Certain funds advised by JCP Investment Management, LLC, which own approximately 15.0% of the outstanding shares of US Geothermal, as well as the directors and officers of US Geothermal have entered into an agreement to vote in favor of the transaction.

ROTH Capital Partners, LLC acted as financial advisor and Dorsey & Whitney, LLP acted as legal counsel to US Geothermal.

<u>**The Proposed Transaction is Unfair to the Company's Shareholders**</u>

28.    As currently constructed, the Proposed Transaction serves primarily as a benefit for Ormat, and not the Company's shareholders.

29.    In 2015, the Company was approached by Ormat with an expression of interest to acquire the Company.  In the months that followed, the Company began to review strategic alternatives to an Ormat acquisition.

30.    Following this process to review alternatives, in July 2016, the Company was approached by Party A, a foreign strategic party, regarding a potential investment in U.S. Geothermal.   Representatives of Party A began to conduct due diligence visits at U.S. Geothermal locations.  During the weeks following Party A's due diligence site visits, members of the Company's management had multiple calls with representatives of Party A regarding due diligence matters.  In late November 2016, U.S. Geothermal received a proposal letter from Party

A which included a nonbinding indication of interest to purchase the outstanding shares of the Company's common stock within a range of $5.30 to $5.93 per share. On November 22, 2016, the date of the proposal letter, the closing price for the company's common stock was $4.11.

31.    For over a year, a special committee consisting of Defendants Larkin, Papas, Hill and Hedayat (who joined the special committee in February 2017) conducted a flawed process that led to the signing of the Merger Agreement by U.S. Geothermal and Ormat on January 24, 2018.

32.    The Merger Consideration does not properly represent the true value of the Company. Nearly every proposal received by the Company was higher than that contemplated by the Proposed Transaction. For instance, as mentioned above, Party A offered $5.30 to $5.93 per share in November 2016. In addition: (i) Party C offered $6.50 per share on January 13, 2017; (ii) Party D made an offer of approximately $5.66 per share on March 16, 2017; (iii) Parties D and E made a combined offer of $6.00 per share on June 20, 2017, which was subsequently raised to $6.25 per share on June 22, 2017; (iv) Party G offered $6.75 per share on July 5, 2017; and, (v) Party D then submitted a revised offer of $5.60 per share on October 20, 2017. Despite all of these offers, the special committee recommended, and the Board agreed to accept, a lower offer of $5.45 per share from Ormat.

33.    What's more, the special committee recognized in September 2017 that the Merger Consideration is in fact lower than the value of the Company. According to the Proxy Statement, Defendant Hedayat reviewed the Company's operations and cash flows, assuming that the company remained a stand-alone company, no development projects were developed, and other assumptions. Defendant Hedayat's review noted potential value of $5.85 per share for

the Company's outstanding shares, representing a $0.40 premium over the Merger Consideration.

34.    Finally, despite two months of negotiations with Ormat, with numerous drafts of the Merger Agreement shared with the special committee during that time, it was not until January 23, 2018, the day before the Merger Agreement was signed, that the special committee learned that U.S. Geothermal's parent company would be Ormat Nevada Inc.  Despite this, taking only a single day to deliberate the issue, the special committee determined that Ormat Nevada Inc. would be a good fit for the Company. This represented a change to the entire structure of the deal, yet a day later the special committee recommended that the Board enter into the Proposed Transaction.

### The Proposed Transaction is Subject to Preclusive Deal Protection Devices

35.    When entering into the Merger Agreement, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for U.S. Geothermal will be forthcoming.

36.    Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish Ormat with the terms of any competing bid; (iii) a matching rights provision which gives Ormat five (5) business days to match any unsolicited superior acquisition proposal the Board receives; and (iv) a provision that requires the Company to pay Ormat a termination fee equal to three percent of the Merger Consideration in cash if the Company ultimately decides to pursue another offer, essentially requiring an unsolicited bidder to pay a premium to provide a superior offer to the Company and its shareholders.

37.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of U.S. Geothermal.

38.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**Interests of the Company's Officers and Directors to Completing the Proposed Transaction**

39.     Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Merger.   The following charts, taken from the Proxy Statement, shows the potential payouts to U.S. Geothermal's officers and directors as a result of the Proposed Transaction:

*Consideration Payable for Shales Held Pursuant to the Merger Agreement*

| Name | Number of Shares | Consideration |
|---|---|---|
| Douglas J. Glaspey | 131,614 | $ 717,296.30 |
| Kerry D. Hawkley | 35,329 | $ 192,543.05 |
| Ali Hedayat | 130,000 | $ 708,500.00 |
| Randolph J. Hill | 0 | $ 0 |
| Paul A. Larkin | 67,470 | $ 367,711.50 |
| Leland L. Mink | 24,729 | $ 134,773.05 |
| James C. Pappas | 2,854,948 | $ 15,559,466.60 |
| John H. Walker | 17,275 | $ 94,148.75 |
| Jonathan Zurkoff | 29,504 | $ 160,796.80 |
| All Officers & Directors | 3,290,869 | $ 17,935,236.05 |

*Consideration Payable for Equity Awards Pursuant to the Merger Agreement*

| Name | Options ($) | Consideration ($) |
|------|------------:|------------------:|
| Douglas J. Glaspey | 205,695 | 380,201.97 |
| Kerry D. Hawkley | 134,394 | 238,919.58 |
| Ali Hedayat | 16,666 | 17,165.98 |
| Randolph J. Hill | 24,666 | 29,792.58 |
| Paul A. Larkin | 80,553 | 147,356.13 |
| Leland L. Mink | 73,887 | 134,024.13 |
| James C. Pappas | 24,666 | 29,792.58 |
| John H. Walker | 80,553 | 147,356.13 |
| Jonathan Zurkoff | 128,860 | 227,337.20 |
| All Officers & Directors | 769,940 | 1,351,946.28 |

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

40.     On March 20, 2018, the Company filed the Proxy Statement with the SEC containing background information and the financial analyses prepared by ROTH and solicits the Company's shareholders to vote in favor of the Proposed Transaction.   Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material false and misleading statements or material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Management Prepared Financial Forecasts

41.     The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of ROTH's fairness opinion, ROTH reviewed "certain information, including financial forecasts, relating to the business, earnings, cash flow, assets, liabilities and prospects of the Company that was furnished to ROTH by management of the Company." Proxy

Statement, at 37. Accordingly, the Proxy Statement did not include certain information in the projections that the Company's management provided to the Board and ROTH.

42.    Notably, the Proxy Statement fails to disclose the financial projections for fiscal years 2018 through 2047 for the following metrics: (1) EBIT; (2) EBITA; (3) capital expenditures; (4) taxes; (5) depreciation and amortization; (6); corporate support (7) flows (into)/from project reserves; (8) development projects; (9) O&M fees; (10) change working capital; and (11) stock-based compensation expense. Proxy Statement, at 46-50.

43.    The above information is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding ROTH's Financial Analyses

44.    With respect to ROTH's *Cash Flow Analysis*, the Proxy Statement fails to disclose the specific amounts of cash & cash equivalents and debt utilized by ROTH in conducting its analysis.   In addition, the Proxy Statement does not disclose the specific inputs and assumptions underlying ROTH's discount rate range of 8.0% to 10.0% for the Company's operating and expansion projects, as well as the discount rate rage of 14.0% to 16.0% for the Company's development projects.  Moreover, the Proxy Statement does not disclose how ROTH treated stock-based compensation expense.  Lastly, the Proxy Statement does not disclose how (or even whether) ROTH incorporated the value of the Company's Net Operating Losses in its analysis.  Proxy Statement, at 43-45.

45.    The above omitted information is material to the Company's shareholders, rendering ROTH's financial analyses false and misleading.

## **Background of the Proposed Transaction**

46.     The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

47.     The Proxy Statement fails to note whether the confidentiality agreements the Company entered into with two parties (other than Ormat) are still in effect and/or contain Don't ask Don't Waive standstill provisions that are presently precluding those parties from making a topping bid for the Company.   Moreover, the Proxy Statement fails to state whether the Company entered into confidentiality agreements with parties other than Party A and Party C.

48.     The Proxy Statement does not disclose the nature and timing of all communications regarding any voting agreements that were entered into in connection with the Proposed Transaction.

49.     The Proxy Statement does not disclose whether any of the Company's executive officers will continue on in their employment after the Proposed Transaction.

50.     The Proxy Statement does not disclose any information about the authority that was granted to the special committee by the Company's Board.  While the Proxy Statement does mention "the process" discussed by the special committee at meetings on December 15, 2016, January 16, 2017, and January 27, 2017 the Proxy Statement fails to provide any further information regarding the nature of "the process" determined by the special committee. Proxy Statement, at 20.

51.     Lastly, the Proxy Statement does not disclose that the special committee, a day before recommending the Company enter into the Proposed Transaction, learned that the Company's parent company would be Ormat Nevada Inc.

52.     The above information is material to the Company's shareholders, and would be invaluable in determining whether to vote in favor of the Proposed Transaction.

**COUNT I**

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

53.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

55.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

56.     The Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

57.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

58.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

59.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

60.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were

intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

61.      The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

62.      Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

63.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.      The Individual Defendants acted as controlling persons of U.S. Geothermal within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of U.S. Geothermal, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65.      Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAW – 17

statements or cause the statements to be corrected.

66.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

67.    In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

70.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      Directing the Individual Defendants to disseminate an Amendment to its Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 30, 2018                              **JONES & SWARTZ, PLLC,**

Eric B. Swartz
625 W. Hays St.
Boise, ID 83702
Ph. (208) 489-8989
Fax (208) 489-8988

*Attorneys for Plaintiff*

**OF COUNSEL:**

Joshua M. Lifshitz (to be admitted *pro hac vice*)
**LIFSHITZ & MILLER LLP**
821 Franklin Ave, Suite 209
Garden City, NY 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376
Email: jml@jlclasslaw.com

CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAW – 20

## SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, JULIE YOUNG, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in HTM securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 03/28/2018

Signature

## EXHIBIT A

My transactions in HTM securities that are the subject of this litigation during the class period set forth in the complaint are as follows (P indicates a purchase, S indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| HTM | 1/27/2017 | | P | 1,084 | $4.58 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |